The judgment of the United States Customs Court is *affirmed*.

UNITED STATES *v*. F. WEBER Co., INC. (No. 4111)[1]

United States Court of Customs and Patent Appeals, March 28, 1938

*Charles D. Lawrence*, Acting Assistant Attorney General (*Joseph E. Weil*, special attorney, of counsel), for the United States.
*Tompkins & Tompkins* for appellee.

[Oral argument February 9, 1938, by Mr. Weil and Mr. J. Stuart Tompkins]

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, and LENROOT, Associate Judges [2]

GARRETT, Presiding Judge, delivered the opinion of the court:

The Government has here appealed from a judgment of the United States Customs Court sustaining the protest of importer seeking to recover certain of the duties collected upon an importation of merchandise classified by the Collector of Customs at the port of Philadelphia, Pa., under paragraph 397 of the Tariff Act of 1930, which embraces certain metal articles and wares not specially provided for, duty being assessed and collected at 45 per centum ad valorem.

[1] T. D. 49506.
[2] JACKSON, Judge, took no part in the consideration or decision of this case.

The merchandise involved in the appeal consists of pantographs, and the claim of importer is that it should have been classified under the provision in paragraph 360 of the act for mathematical instruments, with a duty assessment of 40 per centum ad valorem.

The Government, in effect, concedes that the collector's classification was erroneous, but insists that it should be sustained without approval, it being the Government's contention that the proper classification is under paragraph 360, as drawing instruments, with a duty assessment of 45 per centum ad valorem.

The pertinent portions of paragraph 360 read:

PAR. 360. Scientific and laboratory instruments, apparatus, utensils, appliances (including surveying and mathematical instruments) * * * wholly or in chief value of metal, and not plated * * * not specially provided for, 40 per centum ad valorem; drawing instruments * * * wholly or in chief value of metal, 45 per centum ad valorem.

It is not deemed necessary to quote paragraph 397.

The protest contains alternative claims, which were not waived, under paragraphs 353 and 372. Paragraph 353 provides for certain electrical devices at 35 per centum ad valorem. Paragraph 372, among other things, provides for certain machines, not specially provided for, at 27½ per centum ad valorem. While these alternative claims were not waived, they were not pressed at the trial below, the testimony offered on behalf of the importer being directed, in the main, to the effort to show that the devices are mathematical instruments. The trial court makes no mention of paragraphs 353 and 372. The importer filed no brief in this court but there was oral argument by counsel, appearing on its behalf, and this argument was devoted to sustaining the judgment of the trial court. As we view the case, neither paragraph 353 nor paragraph 372 is applicable, and we shall consider the issue as stated in the Government brief:

Whether the imported merchandise is dutiable as "drawing instruments" at 45 per centum ad valorem under paragraph 360, or at the same rate as manufactures of metal not specially provided for, under paragraph 397, of the Tariff Act of 1930, or as "mathematical instruments" at 40 per centum ad valorem, under said paragraph 360, as claimed by the importer.

It may be stated that at the trial there was also involved a device known as a "planimeter." This was held to be a mathematical instrument, and as to it the Government took no appeal.

The general purport of the testimony of the single witness called on behalf of the importer (the Government introduced no testimony) is that pantographs are used for making a reduced, an enlarged, or an exact copy of a plane figure; that they are used by etchers, engravers, map makers, lithographers, educational institutions for instruction purposes, etc.; that in use, one part or pointer is placed over a drawing and by moving that part or pointer a reproduction of

the identical drawing, traced, appears on another paper, either to the same scale or to a larger or smaller scale, depending on the ratio to which the instrument is set by the axis; that the reproduction does not necessarily have to be a mechanical drawing, and that the "instrument is based on mathematics, its principles, and therefore, your settings are mathematically obtained."

After reviewing the testimony in detail, the trial court, speaking through Dallinger, J., said:

Upon this record counsel for the Government in his brief concedes that the collector erred in classifying these pantographs as manufactures of metal under paragraph 397 of the Tariff Act of 1930. He contends, however, that they are not dutiable at 40 per centum ad valorem under paragraph 360 as mathematical instruments, but are properly dutiable under that paragraph at the rate of 45 per centum ad valorem as drawing instruments. In support of such contention he argues that, in order to be considered a mathematical instrument, a given device must compute; that inasmuch as the pantographs in no way serve to determine or compute dimensions or quantities, they must be excluded from the specific provision for mathematical instruments. We do not agree with this contention. In addition to the uncontradicted testimony that the "instrument is based upon mathematics, its principles, and therefore your settings are mathematically obtained," and that "there are index lines on the slides, which are brought to coincide with the desired ratio of reduction or enlargement," the dictionary definition would seem to controvert Government counsel's contention. * * *

Various dictionary definitions of "Mathematical" and "Mathematical instruments" were then quoted, and the court continued:

The uncontradicted fact that in order to enlarge or reduce a certain drawing the pantograph must be adjusted to a scale which insures mathematical accuracy in our opinion makes it more than a drawing instrument and brings it within the category of mathematical instruments. We see no reason for not adhering to our previous decision in the case of *Keuffel & Esser Co.* v. *United States*, Abstract 24295, 63 Treas. Dec. 1565. In that case we said:

It appears from the testimony, and from a sample of said merchandise, that said pantographs are constructed for the purpose of accurately reproducing linear dimensions on a plane surface in any predetermined ratio, each pantograph being capable of reproducing dimensions within 1/125 to 1/250 of an inch.

In its brief before us the Government quotes definitions of "Pantograph," "Mathematics," "Mathematical," "Mathematical instruments," and "Drawing" from various lexicographers; also, it quotes from Report 55, Second Series, of the United States Tariff Commission, dealing with "Precision Drawing Instruments" as follows:

The drawing instruments included in the scope of this investigation are the tools used by engineers, draftsmen, navigators, and students for the preparation of designs, plans, and maps usually drawn to scale. Typical instruments most commonly used are ruling pens, *compasses*, *dividers*, spring-bow instruments (small compasses and dividers operated by a thumbscrew and spring, instead of by a friction joint), proportional dividers, and beam compasses. * * *

Various judicial decisions are cited and commented upon. It is the gist of the Government's contention that "mathematical instruments

as intended by Congress comprise instruments whose ultimate object is for *computation* and not for drawing or sketching or tracing where the performance of the instrument may require a mere setting of a dial or arm." In conclusion, its brief before us says:

> The Government contends that the merchandise, being drawing instruments, is dutiable as such, and that the assessment of duty at 45 per centum should be affirmed in so far as it relates to pantographs without sustaining the classification of the collector. In the event that this court should hold that the instant merchandise is dutiable neither as drawing instruments nor as mathematical instruments, the Government then submits that the collector's classification of the pantographs should be sustained.

It is not deemed necessary to quote definitions from all the lexicographers. The following are typical of the terms under consideration.

The Century Dictionary defines "Mathematical instruments" as "instruments for mathematical drawing and drafting, such as dividers, protractors, and the like."

Funk & Wagnalls New Standard Dictionary defines "mathematical" as follows:

> * * * 1. Pertaining to or of the nature of mathematics; treating of quantities, as space, weight, and distance; as, *mathematical* science. 2. Based on or conformed to the principles of mathematics; demonstrably correct; rigidly exact, precise; as, *mathematical* conclusions. 3. Used in or connected with the science of mathematics; as, *mathematical* instruments.

Webster's New International Dictionary defines "pantograph" as follows:

> * * * An instrument, essentially of four light rigid links jointed in parallelogram form, to copy maps, plans, or the like on any predetermined scale. The links are uniformly perforated along their lengths, and are permanently jointed, two and two, together, the other joints being variable, according to the scale. The instrument has a fixed pivot at the end of one of the links, a tracing point at the free end of the link jointed to this, and another tracing point at the permanent joint of the other two links. One tracing point is moved over the outline of the diagram to be copied; the other makes the desired copy.

Century Dictionary and Cyclopedia gives the following respective verb and noun definitions of "drawing":

> * * * 3. The act of forming or tracing lines, as with a pen, pencil, point, etc.; specifically, in the *fine arts*, the act or method of representing objects on a surface, strictly by means of lines, but, by extension, by means of lines combined with shades or shading, or with color, or even by means of shading or colors without lines; properly, a method of representation in which the delineation of form predominates over considerations of color. 4. A representation produced by the act of drawing; particularly, a work of art produced by pen, pencil, or crayon; also, a slighter or less elaborate work than a picture, very frequently in the sense of *sketch*, or a hasty and abridged representation of an object, scene, etc., often intended as a study for a more elaborate work to be executed later; also, especially in architecture, etc., a representation of a projected work; a design; a plan.

From the foregoing definitions and kindred ones by other authorities, it seems to us that a drawing device or instrumentality means some-

thing broader than, or at least different from, a mathematical instrument. The definitions of drawing above quoted imply something more than a mere precise tracing or reproduction of a map, design, drawing, or other picture. There is implied by drawing a certain originality of conception, although, as of course, there may be a drawing which is a reproduction of another drawing.

The instruments here at issue are shown to be capable of minute mathematical precision in producing the various outlines, or copies, which it is their function to produce, and, upon the whole, we are of the opinion that they are clearly comprehended within the term "mathematical instruments," as that term is used in paragraph 360, *supra*.

The judgment of the United States Customs Court is *affirmed*.